1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

MICHAEL EUZLE JACQUES,    )   NO. CV 16-3599-GW (KS)
          Plaintiff,    )
                     )
       v.            )   MEMORANDUM AND ORDER
                     )   DISMISSING COMPLAINT
JIM MCDONNELL, Sheriff, *et al*,  )   WITH LEAVE TO AMEND
                     )
         Defendants.   )
_____)

## I.    INTRODUCTION

On July 15, 2016, Michael Jacques ("Plaintiff"), a California state prisoner who is proceeding *pro se* and *in forma pauperis* ("IFP"), filed the operative amended civil rights complaint (the "Complaint") in this action concerning the medical treatment, and lack thereof, that Plaintiff received while in the custody of the Los Angeles County Sheriff's Department at the Twin Towers Correctional Facility ("Twin Towers").  (Dkt. No. 8.)

In civil actions where the plaintiff is proceeding IFP, Congress requires district courts to dismiss the complaint "at any time" if the court determines that the complaint, or any portion thereof:  (1) is frivolous or malicious; (2) fails to state a claim upon which relief can

1

be granted; or (3) seeks monetary relief from a defendant who is immune from such relief.[1] 28 U.S.C. § 1915(e)(2).   In determining whether a complaint should be dismissed at screening, the Court applies the standard of Federal Rule of Civil Procedure 12(b)(6):  "[a] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015).  Thus, the plaintiff's factual allegations must be sufficient for the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and internal quotation marks omitted); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.").

When a plaintiff appears *pro se* in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff the benefit of any doubt.  *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (citations and internal quotation marks omitted)).  In giving liberal interpretation to a *pro se* complaint, however, the court may not supply essential elements of a claim that were not initially pled, *Byrd v. Maricopa County Sheriff's Dep't*, 629 F.3d 1135, 1140 (9th Cir. 2011), and the court need not accept as true "allegations that are merely conclusory, unwarranted

---

[1]     Even when a plaintiff is not proceeding IFP, Rule 12(b)(6) permits a trial court to dismiss a claim *sua sponte* and without notice "where the claimant cannot possibly win relief."  *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987); *see also Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (same); *Baker v. Director, U.S. Parole Comm'n*, 916 F.2d 725, 726 (D.C. Cir. 1990) (*per curiam*) (adopting Ninth Circuit's position in *Omar* and noting that in such circumstances a *sua sponte* dismissal "is practical and fully consistent with plaintiffs' rights and the efficient use of judicial resources").  The court's authority in this regard includes *sua sponte* dismissal of claims against defendants who have not been served and defendants who have not yet answered or appeared.  *See Abagnin v. AMVAC Chemical Corp.*, 545 F.3d 733, 742-43 (9th Cir. 2008); *see also Reunion, Inc. v. F.A.A.*, 719 F. Supp. 2d 700, 701 n.1 (S.D. Miss. 2010) ("[T]he fact that [certain] defendants have not appeared and filed a motion to dismiss is no bar to the court's consideration of dismissal of the claims against them for failure to state a claim upon which relief can be granted, given that a court may dismiss any complaint *sua sponte* for failure to state a claim for which relief can be granted pursuant to Rule 12(b)(6).").

deductions of fact, or unreasonable inferences," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

If the court finds that a *pro se* complaint fails to state a claim, the Court may dismiss the complaint with or without leave to amend.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).  A court must give a *pro se* litigant leave to amend the complaint unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar*, 698 F.3d at 1212 (internal quotation marks omitted); *Lira v. Herrera*, 427 F.3d 1164, 1176 (9th Cir. 2005).  However, if amendment of the pleading would be futile, leave to amend may be denied.  *See Ventress v. Japan Airlines*, 603 F.3d 676, 680 (9th Cir. 2010); *see also Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (when a district court has already granted a plaintiff leave to amend, its discretion to subsequently deny leave to amend is "particularly broad").

For the following reasons, the Court finds that the instant Complaint fails to state a cognizable claim for relief and must be dismissed.[2]  However, leave to amend is granted.

## II.    ALLEGATIONS OF THE COMPLAINT

Plaintiff sues the following Los Angeles County Sheriff's Department employees:  Jim McDonnell, Los Angeles County Sheriff, in his individual and official capacity; John Doe 1, deputy sheriff, in his individual capacity; Deputy Perez, in his individual capacity; Deputy Adeppa, in his individual capacity; Deputy Hadnot, in his individual capacity; Nurse Lopez, in her individual capacity; John Doe 2, a registered nurse, in his individual capacity; Deputy Rojas, in his individual capacity; and Nurse Shipman, in her individual capacity.  (Complaint at 3-4B.)

---

[2]       Magistrate judges may dismiss a complaint with leave to amend without approval of the district judge.  *See McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

3

Plaintiff alleges that while he was a pretrial detainee at the Twin Towers the eight defendants being sued solely in their individual capacity (Defendants Does 1-2, Perez, Adeppa, Hadnot, Rojas, and Shipman) were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.  He alleges that Sheriff McDonnell is liable for these eight defendants' misconduct because "he is legally responsible for the overall operations of both the Sheriff['s] Department and each institution under its jurisdiction . . . as well as legally responsible for the operation of the welfare of all pretrial detainees, parolees, and convicted prisoners."  (Complaint, Attach. at 2.)

Plaintiff alleges that Defendant Perez made "inflammatory and degrading comments" to Plaintiff during meal and medication times, and Plaintiff "attempted to redress" those comments.  (Complaint, Attach. at 5.)  On August 21, 2015, around 3:00pm, Plaintiff began feeling light-headed and dizzy.  (*Id.* at 6.)  He banged on his cell door, yelled for Defendant Perez, and yelled "man down" to indicate that he was in serious medical trouble.  (*Id.*)  Plaintiff also yelled his own name and cell number.  (*Id.*)  "Perez [then] looked directly at Plaintiff's cell seeing [Plaintiff] falling as Perez walked out the entrance of the 142-A-Pod slamming the pod door behind him without the slightest hesitation checking to make sure Plaintiff was okay."  (*Id.*)  Within five minutes of Defendant Perez's departure, Plaintiff experienced a "violent seizure," which caused him "to hit head so hard that [Plaintiff] saw tiny micro dots and split head open above upper left eye."  (*Id.*)  When Plaintiff regained consciousness, he was lying on the ground, and Defendant John Doe 1 walked by as part of a "Title 15 security check" and "witnessed [Plaintiff] on the ground and did nothing."  (*Id.* at 7.)

Thirty to forty minutes later, Plaintiff overhead Defendant Perez tell Nurse Shipman to "forget about Plaintiff, he already went man down to the main clinic earlier in the morning."  (Complaint, Attach. at 7.)  Plaintiff asserts that he had not gone to the main clinic that morning because, although he received a pass to go to the clinic to have his gunshot wound

cleaned, he also had a "chronicle white card" instructing him to shower *after* 1:30pm and *before* having his gunshot wound cleaned and bandaged.  (*See id.*)  Accordingly, he did not use the pass because he needed to shower before having his gunshot wound cleaned and bandaged.  (*See id.*)

Plaintiff explained to Defendants Perez and Shipman that "Perez was lying," to which Defendant Perez responded "Who do you think you are? Pinche mayotay faggot."[3] (Complaint, Attach. at 8.)  Plaintiff, who was apparently still sitting on the floor following the seizure (*see id.* at 8, 10), explained to Defendant Shipman that he had suffered a seizure and hit his head.  (*Id.*)  Defendant Shipman responded, "Yes, I see your head bleeding.  I understand your head bleeding but just take this pill and seizures stop just ordered by doctor." (*Id.*) (errors in original).  Plaintiff states that the pill Defendant Shipman gave him was a psychotropic medication, Geodon, "which has nothing to do with seizures."  (*Id.*) Nevertheless, Defendant Shipman insisted that it was his seizure medicine, saying "No, this your seizure med and it stop seizures listen to me I'm nurse."  (*Id.*) (errors in original). Plaintiff suggests that he was then turned away and did not receive treatment for his bleeding head.  (*Id.* at 8-9.)

Fifteen to twenty minutes later, Deputy Adeppa conducted his Title 15 security check, and Plaintiff begged him to "please help."  (Complaint, Attach. at 9.)  Defendant Adeppa responded, "They know too man.  I'm sorry I can't do everything around here, I'm only one person."  (*Id.* at 9-10.)  Plaintiff states that Defendant Adeppa "walk[ed] off leaving Plaintiff on cell floor."  (*Id.* at 10.)

Another 15-20 minutes passed and Defendant Hadnot came to check on Plaintiff.  (Complaint, Attach. at 10.)  When asked if he was all right, Plaintiff replied, "No!  I had a

---

[3]     Plaintiff states that the English translation of "Pinche mayotay faggot" is "Fucking nigger faggot."  (Complaint, Attach. at 8.)

seizure and I hit my head you see it bleeding?  I was seeing tiny micro dots." (*Id.*)
Defendant Hadnot responded, "Yes, I see your head bleeding.  Hold on." (*Id.*)  Detective
Hadnot returned three to five minutes later and again asked Plaintiff how he was feeling.
(*Id.*)  Plaintiff stated "Not good.  I feel the same." (*Id.*)  Defendant Hadnot asked Plaintiff if
he wanted "program" – that is, to go outside, use the phone, watch TV, and/or take a shower.
(*Id.*)  Plaintiff answered, "No . . . I need to see the doctor!" (*Id.*)

"Shortly thereafter (over a period of two hours)," a medical team arrived, but Plaintiff
was unable to stand up without falling.  (Complaint, Attach. at 11.)  Plaintiff then suffered
another seizure and urinated while convulsing.  (*Id.*)  When Plaintiff regained consciousness,
he heard Defendant Nurse Lopez say, "I'm not picking his ass up he urinated all over
himself!" (*Id.*)  Nurse John Doe 2 stated, "He can just lay there no way I'm picking him up
we could get a sheet and drag him like a funky dead body." (*Id.*)  Defendant Lopez
responded, "Just throw him down the stairs." (*Id.*)  Defendant Lopez and John Doe 2 began
laughing.  (*Id.*)  Defendant Hadnot got frustrated and stated, "This is serious man!" (*Id.*)
Defendant Hadnot and a "trustee" helped Plaintiff get up and start walking, but Plaintiff
"was light headed, dizzy, and [his] head was throbbing with pain and bleeding from the
wound above [his] upper left eye." (*Id.*)  As he walked down the stairs, Plaintiff slipped and
fell.  (*Id.*)

Plaintiff's vital signs were taken.  (Complaint, Attach. at 12.)  John Doe 2 spoke with a
doctor and stated that Plaintiff had suffered a "mild violent seizure" but did not mention that
Plaintiff's head hurt.  (*Id.*)  When Plaintiff informed Doe of the omission, Doe responded
"Oh yeah, I forgot" but did not call the doctor back.  (*Id.*)

Plaintiff was returned to the 142-A-pod in a "wheelchair type chair." (Complaint,
Attach. at 12.)  Plaintiff complained that his head was still throbbing and bleeding.  (*Id.*)

1    Defendant Rojas heard Plaintiff's complaints and told other deputies to tase Plaintiff if he
2    did not want to go back to his cell, and tasers were then pointed at Plaintiff.  (*Id.*)

3

4        Based on these allegations, Plaintiff seeks, *inter alia*, a jury trial and compensatory and
5    punitive damages.  (Complaint, Attach. at 18.)

6

7                        **III.    DISCUSSION**

8

9    **A.    Plaintiff Fails to State an Eighth Amendment Claim.**

10

11       Plaintiff, who challenges the constitutionality of Defendants' conduct during the time
12   that he was a pretrial detainee, cannot state an Eighth Amendment claim against any
13   Defendant.  Instead, Plaintiff's claims concerning the adequacy of his medical care prior to
14   his conviction arise solely under the Due Process Clause.  *See Frost v. Agnos*, 152 F.3d
15   1124, 1128 (9th Cir. 1998) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)); *Hatter v.
16   Dyer*, __ F. Supp.3d __, 2015 WL 9613769, at *3 (C.D. Cal. Dec. 31, 2015) ("[A] pretrial
17   detainee is protected from conditions constituting punishment under the Due Process Clause
18   of the Fourteenth Amendment, not the Eighth Amendment Cruel and Unusual Punishment
19   Clause").  Accordingly, Plaintiff's Eighth Amendment claims must be dismissed for failure
20   to state an Eighth Amendment claim, but this defect may be cured with amendment.[4]

21

22   [4]     Plaintiff is forewarned that the standard for stating this type of claim is in question following the Supreme
23   Court's decision in  *Kingsley v. Hendrickson*, __ U.S. __, 135 S. Ct. 2466 (2015), *see, e.g., Hatter*, 2015 WL 9613769, at
     *4-*11 (summarizing the relationship between the Eighth Amendment and Fourteenth Amendment standards in
24   "conditions of confinement" cases), and the Ninth Circuit is currently considering "whether a Fourteenth Amendment
     deliberate indifference claim is governed by an objective or subjective knowledge standard."  *See Order, Castro v. County
25   of Los Angeles*, 797 F.3d 654 (No. 12-56829), Dkt. 58 (Sept. 17, 2015).  However, under the law at the time of this order,
     Plaintiff, to state a Fourteenth Amendment claim for inadequate medical care, must plead sufficient factual allegations to
26   support the plausible inferences that:   (1) he had an objectively serious medical need; and (2) Defendants were
     deliberately indifferent to it.  *See Castro v. County of Los Angeles*, 797 F.3d 654, 665-66 (9th Cir. 2015) ("[Plaintiff] was
27   required to show by a preponderance of the evidence that (1) he faced a substantial risk of serious harm, (2) the
     defendants were deliberately indifferent to that risk, and (3) the defendants' failure to act was a proximate cause of the
28   harm that he suffered."); *Hatter*, 2015 WL 9613769, at *11; *see also Frost*, 152 F.3d at 1128 ("Because pretrial detainees'
     rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment, . . . we apply
     the same standards.").

                                                        7

**B.    Plaintiff Fails to State a Claim Against Defendant McDonnell.**

**1.  Plaintiff Fails To State A Claim Against Defendant McDonnell in his Individual Capacity.**

Plaintiff seeks to hold Defendant McDonnell liable for the treatment he received in connection with his seizures solely on the grounds that Sheriff McDonnell "is legally responsible for the overall operations of both the Sheriff['s] Department and each institution under its jurisdiction . . . as well as legally responsible for the operation of the welfare of all pretrial detainees, parolees, and convicted prisoners." (Complaint, Attach. at 2.)  Plaintiff does not allege that Defendant McDonnell personally participated in his employees' deficient response to Plaintiff's seizures.  (*See generally*, Complaint.)  Accordingly, Plaintiff does not state a claim against Defendant McDonnell in his individual capacity.

"Liability under [Section] 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *see also Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983, there must be a showing of personal participation in the alleged rights deprivation.").  To demonstrate a civil rights violation against a government official, a plaintiff must show either direct, personal participation of the official in the harm or some sufficient causal connection between the official's conduct and the alleged constitutional violation.  *See Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011).  The inquiry into causation must be individualized and must focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."  *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

Further, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.  *See Ashcroft v. Iqbal*, 556 U.S.

8

662, 676 (2009). Rather, to be held liable, a supervising officer has to personally take some action against the plaintiff or "set in motion a series of acts by others . . . which he knew or reasonably should have known, would cause others to inflict the constitutional injury" on the plaintiff. *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal quotations omitted). "Supervisory liability [may be] imposed against a supervisory official in his individual capacity [only] for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." *Preschooler II v. Clark County Bd. of Trustees*, 479 F.3d 1175, 1183 (9th Cir. 2007).

Finally, Plaintiff has not alleged any *specific* act, omission, or policy promulgated by Defendant McDonnell that caused Plaintiff to be treated with deliberate indifference by jail staff. Plaintiff has similarly failed to allege any facts to support the inference that Defendant McDonnell had "actual or constructive notice" that a defect in either his policies or training programs caused sheriffs' deputies and medical staff to violate detainees' constitutional rights to adequate medical care. *Cf. Connick v. Thompson*, 563 U.S. 51, 61-62 (2011) (when policymakers are on actual or constructive notice that a particular defect in their training program causes employees to violate citizens' constitutional rights, the policymakers may be deemed deliberately indifferent if they choose to retain that program – a less stringent standard of fault for a failure-to-train claim would result in *de facto respondeat superior* liability) (internal quotation marks and citation omitted). Accordingly, Plaintiff fails to state a claim against Defendant McDonnell in his individual capacity.

\\
\\
\\
\\
\\

9

**2.** **Plaintiff Fails To State A Claim Against Defendant McDonnell in his Official Capacity.**

Plaintiff also sues Defendant McDonnell in his official capacity. Plaintiff's official capacity claim against Defendant McDonnell, a Los Angeles County employee, is equivalent to a claim against the County of Los Angeles. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 690 n. 55 (1978). However, a local governmental entity such as the County "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694, 98. Thus, Los Angeles County is not liable for the acts of its employee unless "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers," or unless the alleged constitutional deprivation was "visited pursuant to a governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Id.* at 690-91.

Plaintiff, however, has not alleged that Defendant McDonnell committed the alleged constitutional violations pursuant to a Los Angeles County policy, custom, or practice. Accordingly, Plaintiff fails to state a claim against Defendant McDonnell in either his individual or official capacity, and his claims against Defendant McDonnell must be dismissed with leave to amend.

\\
\\
\\

10

**C.     Plaintiff Fails to State a Claim Against Defendant Adeppa.**

To assert a claim under section 1983 based on prison medical treatment, or lack thereof, a plaintiff generally must show that the defendant was deliberately indifferent to a serious medical need – that is, that the defendant was both "(a) subjectively aware of the serious medical need and (b) failed to adequately respond."[5]  *Rosati*, 791 F.3d at 1039.  A serious medical need exists if a failure to treat the prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).  Further, a defendant acts with deliberate indifference by treating, or declining to treat, the plaintiff in a manner that is "medically unacceptable under the circumstances," and "in conscious disregard of an excessive risk to [the inmate]'s health."  *Rosati*, 791 F.3d at 1039 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).  An "inadvertent or negligent failure to provide adequate medical care alone does not state a claim under § 1983."  *Jett*, 439 F.3d at 1096 (internal brackets and quotation marks omitted).

Plaintiff seeks to hold Defendant Adeppa liable for exhibiting deliberate indifference to Plaintiff's serious medical need based on the following, brief, factual allegations.  Fifteen to twenty minutes after Plaintiff saw Nurse Shipman, Deputy Adeppa conducted his Title 15 security check, and Plaintiff begged him to "please help."  (Complaint, Attach. at 9.)  Defendant Adeppa responded, "They know too man.  I'm sorry I can't do everything around here, I'm only one person."  (*Id.* at 9-10.)  Defendant Adeppa then "walk[ed] off leaving Plaintiff on cell floor."  (*Id.* at 10.)

---

[5]     As explained in footnote 4, this standard is in question following the Supreme Court's decision in *Kingsley* and the Ninth Circuit's current consideration in *Castro* of "whether a Fourteenth Amendment deliberate indifference claim is governed by an objective or subjective knowledge standard."  However, under the law at this time, Plaintiff must satisfy the standard stated above to state a Fourteenth Amendment claim for inadequate medical care.

Plaintiff's allegations that Defendant Adeppa answered Plaintiff's plea for help with the statement "they know," and his statement that he, as "only one person," did not feel capable of rendering adequate assistance to Plaintiff, do not support a plausible inference that Defendant Adeppa responded to Plaintiff's medical need in a manner that was "medically unacceptable under the circumstances," and "in conscious disregard of an excessive risk to [the inmate]'s health." *Rosati*, 791 F.3d at 1039. To the contrary, his allegations suggest that Defendant Adeppa believed the appropriate jail staff had already been notified about Plaintiff's condition and would therefore respond without any additional prompting from him. In addition, Defendant Adeppa's suggestion that he was unable to help Plaintiff further because he was "only one person" is consistent with Plaintiff's subsequent allegations that it required *two* people – Defendant Hadnot and the "trustee" – to help him get off the floor and start walking. Accordingly, Defendant Adeppa's failure to get Plaintiff off the floor by himself reflects a reasonable assessment of Plaintiff's needs and Defendant Adeppa's abilities, as well as his belief that medical help was coming, not a conscious disregard of an excessive risk to Plaintiff's health. Thus, Plaintiff fails to state a claim against Defendant Adeppa for unconstitutional medical treatment, and the claim against him must be dismissed with leave to amend.[6]

**D.      Plaintiff Fails to State a Claim Against Defendant Hadnot.**

Plaintiff seeks to hold Defendant Hadnot liable for exhibiting deliberate indifference to Plaintiff's serious medical need based on the following factual allegations.

---

[6]      Even if the Court evaluates Plaintiff's claim under the *Bell* and *Kingsley* standard, the Complaint fails to state a claim against Defendant Adeppa because it does not include sufficient factual allegations to support a plausible inference that Defendant Adeppa responded to Plaintiff's medical needs with either the intent to punish Plaintiff or in a manner that was not reasonably related to legitimate prison goals. *See Bell*, 441 U.S. at 538 ("Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination [of constitutionality] generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it.") (internal quotation marks and citation omitted); *see also Kingsley*, 135 S. Ct. at 2473 (detention officers' actions constitute unconstitutional punishment for the purposes of the Due Process Clause if they were either:  (1) taken with an expressed intent to punish; (2) not rationally related to a legitimate nonpunitive governmental purpose; or (3) appear excessive in relation to that purpose).

1  Thirty to forty minutes after Plaintiff saw Nurse Shipman, Defendant Hadnot came to
2  check on Plaintiff.  (Complaint, Attach. at 10.)  When asked if he was all right, Plaintiff
3  replied, "No!  I had a seizure and I hit my head you see it bleeding?  I was seeing tiny micro
4  dots."  (*Id.*)  Defendant Hadnot responded, "Yes, I see your head bleeding.  Hold on."  (*Id.*)
5  Detective Hadnot returned three to five minutes later and again asked Plaintiff how he was
6  feeling.  (*Id.*)  Plaintiff stated "Not good.  I feel the same."  (*Id.*)  Defendant Hadnot asked
7  Plaintiff if he wanted "program" – that is, to go outside, use the phone, watch TV, and/or
8  take a shower.  (*Id.*)  Plaintiff answered, "No . . . I need to see the doctor!"  (*Id.*)

9

10  "Shortly thereafter (over a period of two hours)," a medical team arrived, but Plaintiff
11  was unable to stand up without falling.  (Complaint, Attach. at 11.)  Plaintiff then suffered
12  another seizure and urinated while convulsing.  (*Id.*)  When Plaintiff regained consciousness,
13  he heard Defendant Lopez say, "I'm not picking his ass up he urinated all over himself!"
14  (*Id.*)  John Doe 2 stated, "He can just lay there no way I'm picking him up we could get a
15  sheet and drag him like a funky dead body."  (*Id.*)  Defendant Lopez responded, "Just throw
16  him down the stairs."  (*Id.*)  Defendant Lopez and John Doe 2 began laughing.  (*Id.*)
17  Defendant Hadnot got frustrated and stated, "This is serious man!"  (*Id.*)  Defendant Hadnot
18  and a "trustee" helped Plaintiff get up and start walking, but Plaintiff "was light headed,
19  dizzy, and [his] head was throbbing with pain and bleeding from the wound above [his]
20  upper left eye."  (*Id.*)  As he walked down the stairs, Plaintiff slipped and fell.  (*Id.*)

21

22  These allegations do not support a plausible inference that Defendant Hadnot was
23  deliberately indifferent to Plaintiff.[7]  To the contrary, Defendant Hadnot was the last
24  Sheriff's Deputy to speak with Plaintiff about his condition prior to the medical team's
25  arrival, and indeed Plaintiff states that the medical team arrived "shortly" after his
26  conversion with Defendant Hadnot.  Accordingly, Plaintiff's allegations suggest that

27

28  [7]      As with Defendant Adeppa, even if the Court evaluates Plaintiff's claim under the *Bell* and *Kingsley* standard,
the Complaint fails to state a claim against Defendant Hadnot.  *See* discussion at *infra* at footnote 6.

13

Defendant Hadnot obtained medical care for Plaintiff, although Plaintiff may wish the medical team had arrived more promptly.   In addition, although Plaintiff alleges that Defendant Lopez and John Doe 2 laughed and humiliated him after he suffered a second seizure, Plaintiff alleges that Defendant Hadnot expressed disapproval of Lopez and Doe 2's remarks and helped Plaintiff get up and start walking.   Further, although Plaintiff subsequently slipped and fell, he alleges no action, or inaction, by Defendant Hadnot that caused him to fall.   Accordingly, the factual allegations in the Complaint do not support a plausible inference that Defendant Hadnot responded to Plaintiff's medical need in a manner that was "medically unacceptable under the circumstances" and "in conscious disregard of an excessive risk to [Plaintiff's]'s health." *See Rosati*, 791 F.3d at 1039 (internal quotation marks and citation omitted).  Thus, Plaintiff fails to state a claim against Defendant Hadnot for unconstitutional medical treatment, and his claim against Defendant Hadnot must be dismissed with leave to amend.

## IV.    CONCLUSION

For the reasons stated above, the Complaint is dismissed with leave to amend.  If Plaintiff still wishes to pursue this action, he is granted **thirty (30) days** from the date of this Memorandum and Order within which to file a First Amended Complaint.  In any amended complaint, Plaintiff shall cure the defects described above.  **Plaintiff shall not include new defendants or new allegations that are not reasonably related to the claims asserted in the original complaint.**   The First Amended Complaint, if any, shall be complete in itself and shall bear both the designation "First Amended Complaint" and the case number assigned to this action.  It shall not refer in any manner to Plaintiff's earlier pleadings.

In any amended complaint, Plaintiff should make clear the nature and grounds for each claim, specifically identify the Defendants he maintains are liable for that claim, clearly and concisely explain the basis for their liability, and identify which Defendants are being sued

in their individual capacities and which are being sued in their official capacities.  Plaintiff should omit any claims against local government employees in their official capacities unless he alleges specific facts from which the Court can reasonably infer that the alleged violations were the result of the employees' execution of the local government's policy of custom.  Similarly, to state claim against a defendant in his individual capacity, Plaintiff must allege specific facts from which the Court can reasonably infer that the defendant personally participated in the violation alleged. **Plaintiff may not rely on conclusory allegations and formulaic recitations of applicable law.**  Plaintiff is strongly encouraged to utilize the standard civil rights complaint form when filing any amended complaint, a copy of which is attached.

**Plaintiff is explicitly cautioned that failure to timely file a First Amended Complaint, or failure to correct the deficiencies described above, may result in a recommendation that this action be dismissed with prejudice.**

**Plaintiff is further advised that if he no longer wishes to pursue this action, in whole or in part, he may voluntarily dismiss it, or any portion of it, by filing a document entitled "Notice of Dismissal" in accordance with Federal Rule of Civil Procedure 41(a)(1).  A form Notice of Dismissal is attached for convenience.**

DATE: August 5, 2016

KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE

15

THIS   MEMORANDUM   IS   NOT   INTENDED   FOR   PUBLICATION   NOR   IS   IT INTENDED   TO   BE   INCLUDED   IN   OR   SUBMITTED   TO   ANY   ONLINE   SERVICE SUCH AS WESTLAW OR LEXIS.